## IN THE MATTER OF THE TRUST ESTATE OF GEORGE H. HOLT, DECEASED.

### No. 2143.

ARGUED FEBRUARY 26, 1935.          DECIDED MARCH 25, 1935.

BANKS AND PARSONS, JJ., AND CIRCUIT JUDGE CASE
IN PLACE OF COKE, C. J., DISQUALIFIED.

OPINION OF THE COURT BY BANKS, J.

This is an appeal from a decree removing Wade Warren Thayer from the office of trustee of the estate of George

H. Holt, deceased, to which he was appointed under the will of the testator. Two other trustees besides Thayer, namely, George H. Holt, Jr., the son, and Kemelia Holt, the widow, of the testator, were also appointed. An order was duly entered vesting the legal title to the property comprising the trust estate in the three trustees jointly. Subsequently the widow resigned and another order was entered vesting the title in the two remaining trustees. On the 23d day of July, 1932, the first annual account was filed and on the 28th day of June, 1933, the second annual account was filed. Both of these accounts were rendered by Thayer alone, Holt, his cotrustee, not joining. The first account was referred to E. A. Mott-Smith, Esquire, as master, and the second to the Honorable James L. Coke. The accounts, together with the reports of the masters, were submitted to the Honorable Norman D. Godbold, judge of the first circuit court, for judicial action. Mr. Mott-Smith's report was a careful and critical review of the management of the trust and contained unfavorable criticism of certain acts of omission and commission on the part of the trustees. In conclusion Mr. Mott-Smith said: "The master feels that resort to the court should be had by laying all of the difficulties of the estate in one or simultaneous petitions before the equity side of the court to the end that the claims of creditors, the matter of dower, administration expenses, and the rights of bene-ficiaries be speedily determined and adjusted without fur-ther delay, or else the court appoint other trustee or trus-tees who will bring this estate into settlement and order." Judge Coke in his report, after calling attention to certain irregularities in the management of the estate, said: "The record in this estate from its inception in the probate court to the present time discloses a woeful lack of harmony, petty quarrels and dissension, first between the executors and now between the trustees, which has resulted in a sub-

354

stantial loss to the estate." He then made certain recommendations, the second of which is: "The master further recommends that the trustees be cited to show cause why one or both should not, in the interests of the welfare, protection and preservation of the estate, be removed."

It appears from the transcript that the proceeding under which the removal of Thayer and Holt as trustees of the estate was decreed was characterized as follows: "In the Matter of the Estate of George H. Holt, Deceased. Eq. No. 3160." "The above entitled matter came duly on for hearing on Thursday, December 21, 1933, at 9 o'clock a. m., before the Honorable N. D. Godbold, first judge of the circuit court of the first judicial circuit, presiding at chambers in equity, on exceptions to master's report. I. M. Stainback, Esq., of the firm of Messrs. Kemp & Stainback, appearing on behalf of the trustee Wade Warren Thayer; Wade Warren Thayer and George H. Holt, Jr., appearing in person, and Charles B. Dwight, Esq., appearing on behalf of the trustee George H. Holt, Jr., and certain beneficiaries of the trust, Whereupon the following proceedings were had and done, and testimony taken:" The following then appears: "Mr. Stainback: There have been no formal exceptions prior to the report of the master. We at this time would like to file exceptions to the report, particularly to various allegations, and the first one on page 2, where there were three vouchers out of some numerous vouchers. To one of them was a receipt, —a receipt signed by the International Trust Company instead of the trustees; two of them were vouchers signed by the International Trust Company instead of the trustees. Also at the bottom of the page, 'Chaotic condition of estate,' where it says: 'The affairs of this estate are in a woeful condition of chaos because of mismanagement first by the executors, and more recently by the trustees.'

Whatever mismanagement there is, I think has been enumerated by the master. If there is any element of mismanagement,—any other elements, I think they should be reported on. I don't think such a statement should be left in a report." At this stage of the proceeding there was some discussion between the judge, Mr. Stainback, and Judge Coke, the master. At the conclusion of this discussion witnesses were sworn and the judge, without objection by the trustees, proceeded to take testimony on the manner in which the trust had been administered. Mr. Thayer, as well as George H. Holt, Jr., his cotrustee, was fully examined and cross-examined on this subject. It was upon the testimony adduced at this hearing, together with other relevant portions of the record, that the decree of removal was predicated. Holt acquiesced in the decree and took no appeal.

It is contended by Mr. Thayer, the appealing trustee, that the hearing was not upon a petition properly brought for his removal but in a collateral proceeding and therefore the circuit judge was without jurisdiction to render the decree. Our attention is called to 65 C. J. 630, where it is said: "As a general rule, a trustee should be removed by proceedings instituted for that purpose and not in a collateral proceeding."

It may be that the usual procedure for the removal of a trustee is by a bill or petition brought for the purpose by an interested party. Indeed, in some States, it is required by statute. In the absence of statute, however, as is true in this Territory, we know of no precedent for the proposition that this method is exclusive. Let us assume, for instance, that a trustee whose account of his stewardship is submitted to a court of equity for approval is found by a master to have so misused the assets of the trust as to subject him to a surcharge and has so completely abused the confidence reposed in him that the estate is no longer

safe in his keeping. It can scarcely be doubted, we think, that if under such circumstances it should be found upon a hearing of the exceptions to the master's report that the charges against the trustee are true the court would have the inherent power not only to impose the surcharge but also to remove the trustee. To hold otherwise would be to place an unwarranted and dangerous limitation upon the great powers which courts of equity have over trust estates. If jurisdiction to deal with this subject depended on affirmative action by an interested party a faithless trustee might do irreparable harm before such party became aware of his derelictions.

The question remains whether in the instant case the court below had jurisdiction of the persons of the trustees. It is contended by Mr. Thayer that he appeared only for the purpose of settling the first and second annual accounts of the trustees; that he was not apprised of the charges of inefficiency and neglect, and that therefore the court had no jurisdiction in this proceeding to remove him. A reading of Judge Coke's report shows that inefficiency and neglect were the very criticisms made of the trustees' conduct and the fact that the appellant took exceptions to such statements clearly discloses that he was fully informed as to what he was to meet and what questions would be raised. His appearance both personally and by counsel was to defend his trust activities. He was in court to show, and endeavored by evidence to show, that he was not as a trustee guilty of inefficiency or neglect or any other reprehensible conduct. Since he was properly in court for that purpose the court had jurisdiction not only of the subject matter but also of his person and could remove him for good cause.

We come now to the question whether Thayer's removal was under the evidence justified. The power of a court of equity to remove a trustee is a discretionary power

and its exercise will not be disturbed on appeal unless the discretion has been abused. This rule is announced as follows in *Murdoch, State's Attorney,* v. *Elliot,* 77 Conn. 247, 255, 256: "The question primarily before us in this case is not whether this court would remove the trustees for these causes, if the trustees were on trial here; but it is whether the trial court, in refusing to remove them for these causes, did or did not wisely exercise the discretion which the law empowers it to exercise in such cases." In *Suffolk* v. *Leiter,* 261 Ill. App. 82, 108, it is stated: "Whether a trustee should or should not be removed is a question addressed to the sound discretion of the court, and is dependent upon the circumstances of each particular case." In *Gaston* v. *Hayden,* 98 Mo. App. 683, 693, it is said: "A court of equity may and will remove a trustee who has been guilty of some *breach of trust or violation of duty.* The exercise of this function by a court of equity belongs to what is called its *sound judicial discretion* and is not controlled by positive rules except that the discretion must not be abused." See also 3 Pomeroy, Eq. Jur., § 1086.

With this rule in mind let us examine the record and the evidence to ascertain whether the removal of Thayer was arbitrary or whether it was in the exercise of a wise discretion. Under the will of George H. Holt Kemelia, his wife, was given the income of the estate during her life. Before the commencement of the trust and while the administration of the estate was still in the probate court the widow elected to take dower and on November 22, 1929, petitioned for its admeasurement. Herman V. von Holt was appointed commissioner for this purpose and on July 10, 1930, reported among other things that the widow's dower was worth $17,867.20. Nothing further was done toward the allotment of dower until after the executors were discharged and the trust estate was placed, under

the terms of the will, within the jurisdiction of the equity court. Thereafter, on November 4, 1931, the widow filed a bill for the admeasurement and allotment of dower. On March 28, 1932, the trustees and the widow stipulated that a commissioner for this purpose be appointed by the court. In pursuance of this stipulation Sidney C. McIntyre was appointed commissioner. McIntyre reported that the money value of the dower interest was the same as that found by von Holt. On September 7, 1933, almost two years after the widow's second petition for dower was filed, the trustees, the widow and certain minor contingent remaindermen stipulated that in the event the court found that the widow's dower could not be set apart to her in kind without injury to the owners the value of her dower should be fixed at $19,190, and that for the purpose of paying this amount certain described lands belonging to the estate should be sold at an upset price of $22,608. The court in its decree found that the real estate described in the petition could not be set apart without great injury to the owners and that the parties having stipulated that the value of the dower interest of the petitioner was in the sum of $19,190, decreed that such was its value. In order to raise this amount the court decreed that certain described property be sold at the upset price of $22,608. In due course the property was sold, the widow being the purchaser at the upset price. After deducting the stipulated value of her interest she paid the balance in cash into the trust estate.

It appears from the foregoing that from March, 1931, the time when the widow began proceedings in equity to obtain an adjudication of her dower rights, to September, 1933, the time when they were finally determined, there was a lapse of some two and one-half years. Meanwhile taxes had become delinquent and interest on them and on other items of indebtedness was increasing, thus involving

the estate in considerable expense. Lawrence Holt, clerk of another division of the circuit court presided over by Judge Cristy, testified (from his minutes) that "the court ordered Mr. Thayer to use moneys in his hands to pay such taxes and other items as were running up interest." Thayer testified that the trustees could not pay these claims because of the dower controversy. He also testified that no money could be borrowed for the estate nor an apparently judicious sale of real estate to the Waialua Agricultural Company, a prospective purchaser, be negotiated for the same reason. Furthermore, as we have seen, it was necessary to have a second commissioner to admeasure dower appointed, whose fee became a charge against the estate.

It seems to us that if the trustees could, in September, 1933, obtain a stipulation as to certain important facts which resulted in a full settlement of the dower controversy, they could, if they had endeavored to do so, have reached the same compromise and settlement in March, 1931. There is nothing to show nor is there any claim on the part of the trustees that they made any such effort. We think this was not good stewardship. If the effort had been made and had proven successful, as the subsequent event shows it most likely would, a substantial loss to the estate, directly traceable to the prolonged litigation over the dower question, would have been avoided.

In the course of the administration of the estate it became necessary for the trustees to institute suit against L. L. McCandless to recover a considerable sum of money which he owed the estate (32 Haw. 745). Without consultation with his cotrustee and without his knowledge Thayer employed Winn & Nowell, a firm of attorneys, to institute and prosecute the action and a fee was paid them out of trust funds. There is no question that the suit was necessary and that it resulted beneficially to the estate.

Nor is there any doubt about the reasonableness of the fee that was paid. It is nevertheless well settled that where there are cotrustees it is improper for one to act alone in matters involving discretion and judgment. (65 C. J., § 531, pp. 667, 668.) Thayer did not act in conformity with this rule.

The first annual account, which was filed on July 23, 1932, is prefaced by the following statement: "First Annual Report and Account of Trustees Come now Wade Warren Thayer and George H. Holt, Jr., trustees under the will and of the estate of George H. Holt, deceased, and respectfully show to the court as follows:" There then appears a statement of the administration of the trust and a reference to exhibits attached to the petition purporting to show receipts and disbursements. It is prayed that the account be examined and approved. The petition concludes: "Dated at Honolulu this 23rd day of July, 1932. Wade Warren Thayer and Geo. H. Holt, Jr., Trustees under the Will and of the Estate of George H. Holt, deceased, by" (signed) "Wade Warren Thayer their attorney." The petition was verified by Wade Warren Thayer.

While it appears from the face of the report that it was presented by both Thayer and Holt and expressed their joint request that it be approved it nowhere appears, by Holt's signature or by any act of his or otherwise, that he was a party to it or that he approved it. On the contrary he testified that he did not approve it and refused to sign it. Moreover, Thayer did not sign the report as trustee, but as attorney for the trustees. We think it was misleading to the court and unfair to the cotrustee to so formulate the report as to convey the impression that it was a joint act of the trustees when in fact it was Thayer's act alone.

On April 7, 1931, the day following the court order vesting title in the trust estate in him together with Keme-

lia Holt and George H. Holt, Jr., as cotrustees, Thayer sailed for Japan and was absent from the Territory for a period of some three months. Before taking his departure he qualified as trustee by depositing the required bond. George Holt did not qualify until after Thayer's return and it is doubtful if Kemelia ever qualified. It is certain, however, that she resigned on October 10, 1931. During Thayer's absence, therefore, there was no one in the Territory who had any authority to administer the trust. Shortly after his return he filed a petition, upon which no judicial action was taken, the purpose of which was to remove George and Kemelia as trustees and have the International Trust Company appointed in their stead. The ground of his complaint was that neither of his cotrustees had qualified.

It appears from the petition which was sworn to by Thayer that during his absence no one had been attending to the affairs of the estate and that as a consequence it had materially suffered. He specifically alleged that the first payment of taxes, amounting to approximately $1800, fell due and was unpaid and because of nonpayment a penalty was imposed. He also alleged that it was necessary to the protection of the estate that rents, payments on agreements of purchase and other obligations due the estate should have been collected.

There is nothing in the record from which even an inference can be drawn that Thayer, before departing for Japan, conferred with Kemelia Holt and George Holt or made any effort to ascertain whether they were willing to accept the trust or were in a position to give the bonds necessary to their qualification. We think under the circumstances Thayer's abandonment of his duties, temporary though it was, indicated a callous indifference to the welfare of the estate, which was valued at approximately $150,000.

On January 26, 1933, a judgment was obtained by the Security Investment Company against the estate for $2,485.98, and execution was duly issued and levied. On June 3, 1933, the amount of the judgment was paid to the sheriff but no satisfaction was ever obtained by the trustees. When Judge Coke was appointed master he discovered the omission and himself did what the trustees should have done but did not do. This also indicates unconcern by the trustees for the interests committed to their charge.

There are certain portions of the record and the evidence which carry the implication that Thayer was desirous of having Kemelia Holt and George Holt removed and the International Trust Company, of which he was president and manager, substituted, and that he was not at all satisfied with George as a cotrustee. This is shown by the petition, to which we have already referred, and by much testimony given by Thayer that George's indifference to the business of the trust was a hindrance to its efficient management. In their answer to the petition Kemelia and George severely criticized Thayer for the manner in which he had performed his duties and prayed for his removal. At the hearing before Judge Godbold George testified in substance that under the present management the estate was "going right down to nothing" and that he felt that new trustees were for the best interests of the estate.

It is evident that the relations between the trustees were not amicable and that there was a lack of mutual confidence. This should not be overlooked in determining whether the court below abused its discretion in removing Thayer. There is nothing in the record which reflects on his honesty or impugns his integrity. There is much, however, from which the court could reasonably have inferred that Thayer was not sufficiently careful and diligent in the performance of his duties to meet the requirements of good stewardship.

It is suggested by the appellant that in no event did the court below have the power to appoint the Cooke Trust Company as trustee. This suggestion is based on the codicil to the will which provides: "It is my desire and will that International Trust Company, Limited, a Hawaiian corporation, be appointed Co-Executor and Co-Trustee of my said Will in case any of my Executors therein named shall die in my lifetime or shall for any reason be unable or decline to act, and in case all of my said Executors and Trustees shall die in my lifetime or shall for any reason be unable or decline to act, I appoint International Trust Company, Limited, as sole Executor and Trustee of my said Will; and after the death of the Executors and Trustees named in my said Will it is my desire that the said International Trust Company, Limited, shall succeed them as sole Trustee for the remainder of the term of the trust hereby created."

There are three contingencies mentioned in the codicil under which the testator expressed his desire that the International Trust Company serve as executor or trustee. The provisions regarding the first contingency need not be considered, in the first place, because it related to the appointment of the International Trust Company as *co*-executor and *co*trustee, whereas the situation now presented is whether the International Trust Company should be appointed *sole* trustee, and in the second place, because it related to the death of the *executors*, or *their* inability or declination to act during the lifetime of the testator, and as the probate proceedings have long since terminated and the executors have been discharged this contingency can never arise. The second contingency, upon the happening of which the International Trust Company was designated as *sole* executor and trustee, contemplated that if the contingency arose at all it must have arisen during the lifetime of the testator. That this construction is reasonable

and logical is apparent when the codicil is considered as a whole. In providing for the first two contingencies the testator had in mind circumstances which might have arisen in his lifetime. In providing for the last contingency he said nothing about events which might have happened while he was living. He evidently had in contemplation a situation in which the trust had begun and his death had occurred. Therefore he expressed a wish that should all the executors and trustees die then the International Trust Company should succeed them for the remaining period of the trust. The third contingency, that is, the death of the executors and trustees, has not occurred. Therefore the codicil was not an obstacle to the appointment of the Cooke Trust Company.

The decree appealed from is affirmed.

*I. M. Stainback* (*Kemp & Stainback* and *Jean Vaughan* on the briefs) for appellant-trustee.

*G. D. Crozier* (*J. L. Coke* on the brief) for the trust estate.