MADGE B. GASTON, by Curator, Appellant, v.
THOMAS C. HAYDEN, Trustee, Respondent;
ERNEST WEBB, by Next Friend, Appellant.

**Kansas City Court of Appeals, April 6, 1903.**

1. **Trusts and Trustees:** WILLS: CONSTRUCTION. Following Webb v. Hayden, 166 Mo. 39, it is held that defendant Hayden is the trustee of plaintiff and his co-defendant.

2. ————: COURTS OF EQUITY: REMOVAL. Courts of equity have power to remove trustees independent of any statutory authority or direction in the instrument creating the trust, since it is their paramount duty to see that trusts are properly executed.

3. ————: MINGLING TRUST FUNDS: BREACH OF TRUST: REMOVAL. A trustee who willfully or negligently commingles the trust estate and moneys with his own moneys by depositing the same in a bank in his own name, and taking securities in his own name, is guilty of a breach of trust, and a persistence in such conduct authorizes his removal.

4. ————: HOSTILITY TO BENEFICIARY: REMOVAL. In an application to remove a trustee, the fact of his hostility to the beneficiary may be taken into consideration though not of itself sufficient to authorize a removal.

5. **Wills:** LEGACIES: CONSTRUCTION: INTEREST. A will bequeathing certain legacies is construed, and it is held that the testator intended the bequests to be used in the education of the infant legatees and that they were entitled to the interest accumulating on such funds.

Appeal from Jasper Circuit Court.—*Hon. H. C. Timmonds,* Judge.

REVERSED AND REMANDED *(with directions).*

*H. W. Currey* and *R. W. Coleman* for appellant.

(1)  T. C. Hayden is not made trustee of the legacy bequeathed to appellant, Ernest Webb, by the terms of the will of Emma I. Webb, but Rebecca Hayden is by

said will "constituted, nominated and appointed" such trustee. Hayden was made executor of her will in case of 'death or refusal to act of Rebecca Hayden, but the office of executor and that of trustee under the will are, by its terms, entirely distinct. Simpson v. Cook, 24 Minn. 180; Officer v. Simpson, 27 Minn. 147; In re Richenbaugh, 42 Mo. App. 528; Francisco v. Wingfield, 161 Mo. 562; Webb v. Hayden, 166 Mo. 39; Campton v. McMahan, 19 Mo. App. 494; Conklin v. Edgerton, 21 Wend. 430; Smith v. McIntyre, 95 Fed. 585. (2) Defendant Hayden seeks to excuse his handling the trust fund in his own name and mingling it with his own by showing that he is solvent; but his solvency furnishes no excuse for this express breach of trust. State ex rel. v. Branch, 126 Mo. 459. (3) Rebecca Hayden was charged with the duty of expending a portion of the estate in educating and keeping the minor, and where it is made the duty of the executors to expend a portion of the estate for the support and education of the testator's minor children, as trustees, it has been held that they were thereby made in effect testamentary guardians, and such testamentary guardianship did not pass to T. C. Hayden. but was a personal charge to Rebecca Hayden. Woerner's Law of Guardianship, sec. 20, p. 57. (4) The opinion in Webb v. Hayden, 166 Mo. 39, construing this will concedes that Hayden is not trustee by the terms of this will; holds that the will creates an active trust and that a curator could not, in his own name as such, maintain a suit to recover money or property belonging to his ward, and all that is therein said in regard to the proceeding to require Hayden to give bond is *obiter dictum.* Webb v. Hayden, 166 Mo. 39; 9 Am. and Eng. Ency. of Law (2 Ed.), p. 452, title, "*Dictum,*" note 2; People v. Winkler, 9 Cal. 236; Mellinger v. Behren, 53 Iowa 374; Pars v. McBae, 36 Miss. 148. (5) This court is not and should not be bound by the *dicta* in Webb v. Hayden, but should decide the effect of the proceeding

to require Hayden to give bond on principle. St. Louis v. Gas Co., 16 Mo. App. 60; Hans v. Louisiana, 134 U. S. 20; Polloch v. Farmer L. & T. Co., 157 U. S. 574; U. S. v. Wong Kim Ark., 169 U. S. 679; Express Co. v. Toley, 46 Kans. 464. (6) Hayden commingled the trust fund with his own, deposited the money belonging to Ernest Webb in the bank in his own name and took the notes and mortgages in his own name, without anything to indicate that the fund was a trust fund. He has not followed the terms of the will in handling the trust fund. This constitutes a breach of trust for which he ought to be removed. Williams v. Williams, 55 Wis. 300; Mason v. Bank, 16 Mo. App. 275; Pomel v. Hart, 31 Mo. App. 636; 2 Perry on Trusts, 475, 821, 822; 2 Pom. Eq. Jur., secs. 1063, 1073, 1077 and 1079; Trust Co., v. Eaton, 140 Mass. 532; Drake v. Crane, 127 Mo. 106. The direction of the will is that the trustee invest the money in real estate. Hayden invested in personalty in his own name. It is an old rule of equity that trustees shall not, without leave of court, invest trust moneys in personal securities. Garesche v. Inv. Co., 146 Mo. 446.

*Frank L. Forlow* and *Howard Gray* for respondent.

(1) It will be admitted that the general rule is that a legacy does not bear interest until one year after the date of the death of the testatrix. Catron's Estate, 82 Mo. App. 416; Section 238, Revised Statutes 1899; Way v. Priest, 13 Mo. App. 555. (2) The questions, therefore, to be decided are the circumstances concerning the execution of this will such as to bring the legacies within the exception to this general rule. Even though the father was not worth a dollar, yet under the present law of this State, to-wit, section 110, Revised Statutes 1899, the support of a minor child is provided for out of the general estate of the parent. Sec. 110 R. S. 1899. (3) The sum willed to Madge B. Gaston

must come under the general rule. She was not a child of the testatrix, but was a very young child of tender years, whose father was living, and the judgment of the court is also conclusive that said sum was not to be used from the date of the death of Emma I. Webb. The court thus found that no part of said money had been needed for several years after the death of the testatrix. (4) The evidence shows that Mrs. Webb did not have, at the time of the death, the twelve thousand dollars willed to her son and niece, and property had to be sold to obtain it. (5) The decision of the Supreme Court in 166 Missouri, at page 39, wherein this will is construed, disposes of nearly all the points contended for in the trial court by Ernest Webb. The circuit court saw the witnesses, observed their demeanor on the witness stand, examined carefully all the acts of T. C. Hayden since he took charge of the funds as trustee, and being convinced that he is honestly, and faithfully and diligently discharging the duties toward his nephew and niece as their trustee of the funds willed to them by his sister, recited in the judgment the facts as follows: "Said trustee has in good faith cared for and preserved the estates of said minor children as receipted for by him at the date of said final settlement; that said trustee has satisfactorily complied with the terms and requirements of the order of this court made at the last June term thereof, and that said trustee should not be removed from said trusteeship.

SMITH, P. J.—Emma I. Webb, divorced wife of E. T. Webb and mother of Ernest Webb, departed this life in the year 1894, first having made her last will which, amongst other provisions, contained the following, to-wit:

"Second. I give, devise and bequeath to my son, Ernest Webb, the sum of ten thousand dollars, to be held by my executrix hereinafter named in trust until my said son arrives at the age of twenty-one, and then

given to him. Said sum during the infancy of my son to be loaned out by my executrix on real estate in Jasper county, Missouri, and the interest thereon to be used in keeping, maintaining and educating my said son.'

"Third. I give, devise and bequeath to my niece, Madge B. Gaston, the sum of two thousand dollars, to be held in the same manner and invested and expended as is provided in the preceding paragraph for the holding, investing and expending of the ten thousand dollars bequeathed to my son, Ernest Webb. Provided, however, that in case of the death of the said Madge B. Gaston at any time during her infancy, then the said sum herein bequeathed to her shall become the money and property of my son, Ernest Webb, and may be used in educating him.

"Fourth. I give, devise and bequeath all the balance of the property owned by me, whether real or personal, at my death to my mother, Rebecca Hayden, and my brother, Thomas C. Hayden, share and share alike, and should either of them die before I do, then the other shall have all the property described in this paragraph.

"Fifth. In case at my death I should not have in money the sums herein willed to my son and niece, but have the same in property, then I desire that my executrix shall, after having it appraised by three disinterested freeholders of Jasper county, appointed by the probate judge of said county, sell at public or private sale sufficient of said property to obtain said sums, provided said property shall not be sold at less than three-fourths of its appraised value.

"Sixth. I hereby constitute, nominate and appoint my mother, Rebecca Hayden, of Jasper county, Missouri, executrix of this my last will and testament, and in case of her death or refusal to act, then I desire that my brother, Thomas C. Hayden, shall become the executor of this will, and he is hereby constituted, nominated and appointed such executor in case of my mother's death or refusal to act."

Rebecca Hayden, so named as executrix of said will, refused to qualify as such, and thereupon Thomas C. Hayden under the said clause became executor and qualified as such. He fully administered said estate and made a final settlement thereof; and filed with the probate court receipts from himself as testamentary trustee of Ernest Webb and Madge B. Gaston to himself as executor of said will for the amount of the two several legacies provided for them in the second clause of said will. It appears that later on, the fathers of the respective infant legatees became dissatisfied with the administration of the said trusts by the said Hayden, and this action was begun by Madge B. Gaston by her curator—her father—against him and the other legatee, Ernest Webb, having for its object the construction of the said will and a determination of whether or not under the terms thereof the said Hayden was appointed trustee or authorized to act as such, and if so authorized then to remove him and to appoint some other person to act in his stead, etc.

The defendant, Ernest Webb, by his guardian. *ad litem,* filed an answer and cross-petition, in which it was denied that the said ten-thousand-dollar legacy was given to the said Hayden in trust but that the same was given to him—the legatee—absolutely, etc. The cross-petition charged the said Hayden, as executor (1) with retaining said legacy and refusing to loan the same; (2) with mismanaging the said legacy by using it for his own benefit; (3) with wrongfully loaning two thousand dollars of said legacy on real estate in Hickory county; (4) with loaning part of said legacy on personal security; (5) with appropriating another part of the same to his own use; (6) with refusing to permit his father—E. C. Webb—to see the papers, securities and funds of the said legacy or to know the condition thereof, etc.

In the petition of Madge B. Gaston it is charged that the fund bequeathed in trust for her is a separate

and distinct trust from that bequeathed to Ernest Webb, but that notwithstanding this, the said Hayden—trustee thereof — has inseparably commingled and intermixed the two funds; that he had failed to keep any account whatever of his transactions with said funds and had refused to account with her or her curator respecting his transactions and dealings thereof; that he had refused to allow her or her curator to inspect the securities upon which he claimed said trust funds were invested, or the notes or other evidences of indebtedness taken for the loan thereof; that he had failed to pay interest on the amount of said bequest to her curator for the purpose of her education, etc., but had wrongfully retained both the fund and the interest thereon. These allegations were supplemented with others similar to those contained in the cross-petition of Ernest Webb, already referred to. A removal of the trustee was prayed in both petitions.

The allegations contained in both the petition and the cross-petition were controverted by the answer of Hayden. There was a trial and a decree for defendant, which in substance was: (1) that defendant Hayden was the duly appointed trustee of the estates bequeathed to both of said minors; (2) that said defendant as trustee had in good faith cared for and preserved said estates and ought not to be removed; (3) that the amounts due each of the legatees, respectively, should bear interest from the date of the death of the testatrix to that of the final settlement, and from the latter date eight per cent compounded annually, etc.; (4) that the father of the legatee, Ernest Webb, being a man of large property and willing to provide for the education and maintenance of the latter, that the trustee retained the control of the whole of said bequest of such latter; (5) that as the father of Madge B. Gaston was a man of small means, that the said trustee pay over to her father, as her curator, certain specified sums for her education and maintenance, etc.

Vol 98 app—44.

Each of the parties to the record has appealed here.

I.    Touching the question of whether or not the defendant Hayden was a trustee for said minors under the provisions of the will, it will be observed that in Webb v. Hayden, 166 Mo. 39—which was an action by E. C. Webb, curator of Ernest Webb, the legatee under the will, against T. C. Hayden, the trustee, to recover the moneys belonging to the said minor in the possession of the latter, as trustee—it was in effect held that the said Hayden was in the possession of the fund in the quality of trustee.    It will not do to say the court did not in that case construe the will nor that the construction so declared is but mere *obiter dicta*.    It is true the court might have disposed of the appeal by holding, as it did, that the plaintiff Webb could not maintain the action in his own name; but it elected not to do so and proceeded, as was proper, to decide other points raised by the appeal adversely to the plaintiff Webb.    Amongst such other points so raised was that of whether or not the defendant Hayden was trustee of the legacy bequeathed by the will to Ernest Webb.

The decision was that Hayden was then in possession of that fund as trustee.    It is not declared whether he derived his appointment from the will or from the order of the court made in respect to the giving of the bond as trustee.    It only declared in express terms that he was trustee of the fund, but whether he derived the title to that office wholly from the will or the order of the court referred to, or from both, is not clearly stated. A reading of the entire opinion in the case will show that the question as to whether or not he (Hayden) was trustee of the legacy and entitled as such to the possession and management thereof, is foreclosed as to us by the ruling in that case.

II.    Having reached the conclusion that we are required to regard the defendant as the trustee of the bequest, it is next to be determined whether or not he should be removed on any or all of the grounds there-

for alleged in the petition and cross-petition. The evidence disclosed by the record is ample to sustain the allegations of the cross-petition as respects the misconduct of the defendant trustee. It appears that at the close of his account as executor of the estate of the testatrix he retained in his hands as trustee for said beneficiary the ten-thousand-dollar bequest but wholly neglected to keep clear, distinct and accurate accounts relating to the same. Not only did he keep no such book of accounts, but the notes and securities on which said fund was loaned he made payable to himself in his individual capacity, and in that way he so merged it into his individual funds that its identity, or the securities on which it was loaned or in which it was invested, became wholly lost. When he collected moneys on the securities belonging to the trust he deposited the same in bank to his individual credit. So far as it appeared from the entries in any book, or from any record, paper, note or security, the trust fund had no existence. Blended and mixed with the individual funds of the trustee and the beneficiary Webb were also the funds which the former held as trustee for the plaintiff, Madge B. Gaston. By this blending and mixing the identity of the trust funds were as completely obliterated as if they had never existed.

The trust fund was managed and used by the defendant in his own name and in the same manner as if it were his own. No record was anywhere made of the various transactions touching the fund. No note or security taken wore the impress of the trust or any earmark of it. A more unbusinesslike method of handling the fund could not be well imagined. If a call had been made upon him by the beneficiaries, or those representing them, to produce for inspection the books, documents and papers relating to the fund, the call would have been futile.

It is stated in section 1076 of Pomeroy's Equity Jurisprudence that the duty of good faith prohibits the

mixing together the funds of the trustee with those of the beneficiary in one amount, the depositing the trust money in the trustee's own personal account with his own moneys in bank, mingling the receipts and payments of trust moneys and his own moneys in his books of account, and all similar modes of combining or failing to distinguish between the two funds. He may not thus mingle trust moneys with his own even though he eventually accounts for the whole and nothing is lost. This rule is to protect the trustee from temptation, from the hazard of loss and from being a possible defaulter. In Williams v. Williams, 55 Wis. 300, in referring to the duty of the trustee to keep the trust fund marked and separate from his own, it is said no matter what he intends to do, or what the cashier or clerk may think he is doing, the deposit must wear the impress of the trust, or he can not, when brought to an account, call it trust property. The fact that he delivered the moneys to the bank and thus allowed them to be mingled with other funds, destroyed their identity as completely as though he had first mingled them with an equal amount of his own moneys and then deposited the whole in bulk. The making of the deposit and taking the certificates to himself individually was therefore not only an extinguishment of the identity of the money but an appropriation of it at law to his own personal use.

And in section 1076 of Pomeroy's Equity Jurisprudence it is further said that it is well settled that every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent or done through negligence, or arising through mere oversight or forgetfulness, *is a breach of trust.* It is accordingly made to appear that the trustee continually and persistently violated the duties of the trust by the mode in which he administered it.

The power of courts of equity over the removal of trustees, independent of any statutory authority or any direction in the instrument of trust, is well established.

Pomeroy's Eq. Juris., sec. 1086. In May v. May, 167 U. S. l. c. 320, it is said that the power of equity to remove a trustee and to substitute another in his place is incidental to its paramount duty to see that trusts are properly executed. In section 275 of Perry on Trusts, are specified a great number of grounds for the removal of a trustee, and amongst which is that where he misconducts himself or deals with the trust fund for his own personal profit and advancement, or commits a breach of trust, or fails to invest as directed, or loans the funds on personal security, or where a hostile feeling exists between him and the beneficiary. In Pomeroy's Equity Jurisprudence, section 1086, it is also stated that the power of removal is confined to cases of actual express trusts. A court of equity may and will remove a trustee who has been guilty of some *breach of trust or violation of duty*. The exercise of this function by a court of equity belongs to what is called its *sound judicial discretion* and is not controlled by positive rules except that the discretion must not be abused.

But not only does it appear from the evidence adduced that the trustee was guilty of a long and unbroken series of breaches of his trust, but that his feelings towards the father, who is the guardian and curator and beneficiary, were extremely hostile and bitter. It is true that this feeling does not extend to the infant beneficiary himself, but it does extend to his representative, who is the only other person who would probably and most likely care for and look after the preservation of the trust fund. During the infancy of the beneficiary his father and curator would have the legal and natural right, in the name of and in the interest of his son and ward, to call upon the trustee to produce for inspection the books, papers and documents, and for information relating to the trust fund, so that it seems that the father and curator stands in the place of the infant beneficiary and that the practical effect of the hostility of the trustee to the former is the same as if it had existed to the latter.

The hostility between the trustee and the father and curator was mutual and had existed since the date of the divorcement of the latter from the testatrix. In Gartside v. Gartside, 113 Mo. 348 l. c. 356, it is said that hostility between the trustee and the *cestui que trust* is not of itself a sufficient ground of removal unless it appears that the action of the former is probably controlled or might be controlled by it. In May v. May, supra, it was said that the power to remove a trustee may be exercised whenever such a state of mutual ill feeling growing out of his behavior exists between the trustee in question and the beneficiary that his continuance in office would be detrimental to the execution of the trust, even for no other reason than that human infirmity would prevent the beneficiary from working in harmony with him, and although charges of misconduct are either not made out or are greatly exaggerated. In Scott v. Rand, 118 Mass. 215, it is said in the opinion that the question of removing a trustee depends upon a careful consideration of all the circumstances, the existing relations and, to some extent, the state of feeling between the parties. It is addressed to the reasonable discretion of the court. There are numerous other cases to the like effect cited in the brief of the next friend of the infant beneficiary.

There is nothing in the record relating to the administration of the trust which in the slightest impugns the integrity of the trustee. All through the taking of the testimony at the trial he manifested his ill feelings towards the father of the beneficiary and his disinclination to furnish him with any information respecting the trust, or indeed to recognize any right in him to know any fact touching the trust. In view of the numerous and persistent violations by the trustee of his trust and the probable continued repetition thereof if he be continued, the relation of the parties to the trust and their hostility, in our opinion, makes the continuance of the trustee incompatible with the best interests of the beneficiary; and for that reason he should be removed and

another fit person appointed in his place. And the foregoing observations and conclusions are alike applicable to the defendant Hayden's trusteeship of plaintiff Madge B. Gaston, and for like reasons he should be removed from the office of trusteeship as to her. Every ground for his removal existing in the one case exists in the other. There is no substantial difference between them.

III. In looking at the second and third clauses of the will we must conclude that the legatees therein named were entitled to the interest accruing on the special legacies therein provided from the death of the testatrix, and that the rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary has no application in a case of this kind. The interest that accrued on the legacy was a part of the legacy itself, to which the legatees were entitled from the death of the testatrix. This is made plain by what was said by us in In re Estate of Catron, 82 Mo. App. 416.

The object of the testatrix in making the bequest most manifestly was to provide for the maintenance and education of the two infant legatees from her death, without reference to the ability and willingness of their respective fathers to do so. She may, and probably did have the thought that they might be unable or disinclined, for some reason, to contribute the needed support for these purposes, and so made her will to meet that contingency. Besides this, it seems that the testatrix at the time of her death had interest-bearing securities nearly equal in amount to the legacies and that those securities came into the possession of the trustee so that he actually received the interest with which he was charged; therefore, there was no hardship imposed by the finding of the court in that regard.

It results that the decree will be reversed with directions to the trial court to order and decree the removal of the defendant from each of said trusteeships

and to appoint some fit and proper person in his stead to hold and invest said trust funds for each of the said infant legatees in accordance with the terms of the will—requiring said new trustee to give a proper bond with adequate sureties thereon for the faithful administration of the trust, to be approved by the court. And that upon the appointment of such new trustee, the defendant Hayden be further ordered and compelled to pay to such succeeding trustee the said trust fund with six per cent interest thereon from the death of the testatrix; and that an account of said trust fund in his hands be taken and determined and ordered to be paid over to this succeeding trustee; in other respects the decree not to be disturbed. All concur.