**800**

The TRUSTEES OF FORESTGREEN ES-
TATES, 4th ADDITION, et al.,
Plaintiffs-Respondents,

v.

Jack W. MINTON et al., Defendants-
Appellants,

Neal Willis et al., Intervenors-
Respondents.

Nos. 35027, 35138.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 23, 1974.

Motion for Rehearing or Transfer to Court
En Banc or Transfer to Supreme Court.
Denied June 12, 1974.

Application to Transfer Denied
July 22, 1974.

Jack F. Allen, Clayton, for defendants-appellants.

Ziercher, Tzinberg, Human & Michenfelder, Clayton, for plaintiffs-respondents.

William H. Wyne, Jr., Edward E. Murphy, Jr., St. Louis, for intervenors-respondents.

GUNN, Judge.

Defendants-appellants appeal a decision in an equitable action permanently enjoining them from interfering with the use and access by plaintiffs-respondents over private streets within a residential subdivision and removing defendants-appellants as trustees of their subdivision.

Seining through the testimonial waters we catch two basic issues which are dispositive of this case: 1) whether plaintiffs have a prescriptive easement over the roads which defendants sought to close off thereby making interference with the use illegal, and 2) whether there was sufficient evidence to sustain the trial court's judgment removing defendants as trustees of their subdivision. We find in the affirmative to both issues and therefore affirm the judgment of the trial court.

The area involved is titled Forestgreen Estates and is located in Ladue, Missouri. The entire Forestgreen Estates Subdivision consists of 120 acres which have been divided into five subdivision plats known as Forestgreen, plats 2, 3 and 5 and Forestgreen 4th Addition, but which will hereafter be referred to as plats 1, 2, 3 and 5 and 4th Addition. Plaintiffs are the trustees of the 4th Addition, and defendants are the trustees of plats 1, 2, 3 and 5.[1] Intervenors-respondents are residents of plats 1, 2, 3 and 5 who have sought to restrain defendants' interference with a roadway and the removal of defendants as trustees of plats 1, 2, 3 and 5.

In the beginning, a developer, C. C. Ziegler, secured an option to develop the entire 120 acre tract, and on November 7, 1960, the Ladue Zoning and Planning Commission approved the preliminary subdivision plat. Through intricate financing agreements with Jefferson Savings & Loan Association, Ziegler, corporations owned by him or his assigns purchased and developed the lot areas contained in plats 1, 2, 3 and 5. Jefferson Savings & Loan Association obtained title to and developed the 4th Addition. The 4th Addition plan was approved by the Ladue Zoning and Planning Commission on November 10, 1961 and recorded on November 29, 1961. Development of the lots commenced in late 1961 and early spring, 1962.

The five plats (1, 2, 3, 5 and the 4th Addition) were placed under indentures filed with the plats by the developers. The indentures of plats 1, 2, 3 and 5 were identical and therefore merged into one trusteeship. The 4th Addition was under separate indenture and under a separate trusteeship.

The first matter upon which we dissertate concerns prescriptive easement rights to a road. Wild Deer Road runs through the 4th Addition and continues as the same roadway but under the name of Copper Hill Road into plat 3, which is immediately contiguous to the 4th Addition. Copper Hill Road also serves other subdivision plat areas. The Wild Deer-Copper Hill Road was established and passable for motor vehicle traffic in late 1961 and early spring 1962 and was used by residents of all five of the subdivisions. From time to time, certain trustees of plats 1, 2, 3 and 5 objected to the through use of Wild Deer-

---

1. George Gerstner and Gerstner Electric, Inc., were also named as defendants but not in a capacity as subdivision trustees.

Copper Hill through their subdivision plat areas and a few ineffective efforts were made to block off the roadway between the 4th Addition and plat 3. On June 5, 1972, defendants as trustees for plats 1, 2, 3 and 5 met and determined to permanently block the roadway between the 4th Addition and plat 3. Defendant Gerstner and his company were employed to construct a rock garden across the roadway which would completely close it off to motor traffic moving between the 4th Addition and plats 1, 2, 3 and 5. Plaintiffs and intervenors were successful in their action in the circuit court to halt the interference with their use of Wild Deer-Copper Hill.

Plaintiffs allege that they have a prescriptive easement to unfettered use of Wild Deer-Copper Hill as a roadway allowing passage between 4th Addition and plats 1, 2, 3 and 5. Intervenors agree with them. Defendants counter that there was evidence that the street had been chained or barricaded at least three times within the ten year period and had been chained off at the early construction stages 1962 and 1963; that consequently, plaintiffs are unable to establish continued and uninterrupted use of the roadway for ten years or more.

Three residents of the 4th Addition testified that they had used the through Wild Deer-Copper Hill roadway since the latter part of 1961 and early spring of 1962 until halted by the rock garden excavation on June 15, 1972. One witness admitted that a chain was placed over the roadway for a very brief period. None of the three witnesses was ever prevented from free use of the road, and it was used regularly both as an access to their homes through plats 1, 2, 3 and 5 and for the delivery of construction materials in connection with the witnesses' businesses in the construction of homes in the entire subdivision. A fourth witness testified that from April, 1963 to June 15, 1972, his use of Wild Deer-Copper Hill had never been impeded.

For the defendants, there was testimony contradictory to plaintiffs' as to the length of time a chain blocked the roadway and the effectiveness of the blocking. Defendants' own evidence in this regard ranged from the chain never having been down in 1962 and 1963 and being seen "a hundred times" by one witness to its being up for short periods in 1962 and 1963, but not as an effective barrier to traffic. There was also conflicting testimony concerning the sophistication of the roadway development during its incubative stages and whether it was passable. The trial judge found in favor of plaintiffs and intervenors regarding the credibility of testimony concerning the chain and use of the roadway by plaintiffs and held the chain in 1962 and 1963, if it did exist, did not interrupt plaintiffs' use of the roadway. We must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(d), V.A.M.R. And we do not here have reason to believe the trial court's findings determining the conflicting testimony in favor of plaintiffs to be clearly erroneous.

So much for the chain in 1962 and 1963 and whether it interrupted traffic over Wild Deer-Copper Hill. The trial court found that it did not, and we do not disturb those findings. But, in addition, there were three brief episodes where attempts were made to block off Wild Deer-Copper Hill. On Labor Day weekend, 1966, a chain barrier was placed across the roadway; on April 18, 1967, the road was barricaded; in September 1971, a portable barricade was placed across the road. In each instance within a short period of time—minutes or a few hours—after the barriers were placed, they were torn down by residents of the 4th Addition in two instances, and in one case by a woman resident of plat 3. The barricades were therefore not effective to stop traffic.

 Do plaintiffs have a prescriptive easement over Wild Deer-Copper Hill? The law regarding prescriptive easements has been oft recited but scarcely better than in the two recent decisions of George v. Dickinson, 504 S.W.2d 658 (Mo.App.

1974) and McDougall v. Castelli, 501 S. W.2d 855 (Mo.App.1973). We borrow heavily from these two cases in reaching our decision. The essential elements for prescriptive easement are use of the land which is open, visible, continuous, uninterrupted for the required period of time and adverse under a claim of right. George v. Dickinson, *supra*. " 'Adverse,' under the definition, means that the one making the use 'shall not recognize in those as against whom it is claimed to be adverse an authority either to prevent or permit its continuance. It is the nonrecognition of such authority at the time the use is made which determines whether it is adverse.' " McDougall v. Castelli, *supra* at 858, quoting from Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894, 899 (1945). And continuation of use of easement may be tacked onto the prior use of predecessors to establish the required time requirement. Beldner v. General Electric Company, 451 S.W.2d 65, 75 (Mo.1970).

Regarding the claim of right element, in Moravek v. Ocsody, 456 S.W.2d 619 (Mo. App.1970), it was said, l.c. 625:

> "It is not necessary that there be shown an express claim of right in words, or that the adverse party expressly admit his knowledge of it. These facts may be inferred from the nature of the use and the situation of the parties. It is sufficient that the person who has allegedly established the easement acts in such a manner as clearly indicates he claims title to the easement."

■ Defendants argue that the placing of the chain and barricades across the roadway for brief periods was sufficient to interrupt plaintiffs' use of the road. The trial court found to the contrary, and there was substantial evidence to support its decision. In fact, plaintiffs' immediate removal of any obstacle goes to establish their hostile use of the roadway under claim of right. The elements to establish a prescriptive easement in Wild Deer-Copper Hill in favor of plaintiffs were present in

this case. The trial court was not in error in finding plaintiffs established an easement by prescription over Wild Deer-Copper Hill. The use was open, adverse, notorious, continuous for a period of at least ten years and by virtue of actions in use under claim of right. The unsuccessful efforts to block the roadway do not enervate plaintiffs' position that their use was uninterrupted, for, in fact, the barriers did not obstruct the use. Plaintiffs' actions in immediate removal of the barriers to avoid hampering of their use strengthens their argument of adverse, hostile use under claim of right.

Defendants argue that since a suit was brought by the trustees of plats 1, 2, 3 and 5 against one of the 4th Addition residents for damages resulting to a barricade across the roadway which the resident had removed, no prescriptive right can be claimed by the party who has been sued, citing 28 C.J.S. Easements § 13e (1941). However, the argument is not apt, for the suit filed by the trustees of plats 1, 2, 3 and 5 against the resident of the 4th Addition does not apply to the plaintiffs here who seek a prescriptive easement and who were not parties to that case and who are asserting an easement under their own right. Further, the suit against the 4th Addition resident was for damages to a barricade and not for use of Wild Deer-Copper Hill.

Since we determine that plaintiffs and intervenors have an easement by prescription over Wild Deer-Copper Hill, we need not rule on issues raised at trial of whether plaintiffs-intervenors had an easement over Wild Deer-Copper Hill by implication, necessity or by express or implied grant.

The next issue concerns the removal of the defendants as trustees of plats 1, 2, 3 and 5. The trial court found that defendants had breached their duties to the property owners of their subdivision in that they failed to act with utmost integrity and loyalty; failed to hold regular meetings and did not maintain records of their meet-

ings as required by the indenture restrictions; that they did not follow procedures for assessments according to the trust indenture; they withheld information from the property owners, refused to respond to inquiries and misled the property owners; they restricted the right of ingress and egress on a street within their control (Copper Hill Road) in such a manner as to be tantamount to an abandonment of easeent without approval of the property owners, all contrary to the trust indenture.

It is clear that frequently meetings of defendants as trustees were held without any recordation minutes of what transpired. Also, despite the fact that expenditures exceeded income in the operation of the subdivision for at least one year, defendants did not provide for the possibility of a special assessment to cover the excess costs as required by the trust indenture. There was also evidence that inquiries concerning the status of certain matters of the subdivision were ignored and that indication had been given by the defendants at a subdivision meeting on May 8, 1972, prior to the June 15 closing, that nothing was contemplated with regard to the closing of Wild Deer-Copper Hill. Defendants also closed off Copper Hill without written approval of the Ladue City Council, which amounted to an abandonment of an easement in a manner contrary to the provisions of the trust indenture, Section 3, Subsection C thereof.

■ Defendants contend that the action of the trial court in removing them as trustees was oppressive and the portion of the decree declaring that defendants failed to act with utmost integrity and loyalty was unnecessarily harsh. We agree that the record is absolutely devoid of any evidence to support a finding that would impugn the integrity of defendants or which would malign their character or suggest perfidy on their part in performance of duties, and we reject and overrule any portion of the trial court's decree which sullies the honor or questions the honesty or good faith actions of defendants. But we

will not set aside the judgment of the trial court in removing the defendants as trustees on other grounds unless his decision is clearly erroneous. Hawn v. Hawn, 505 S.W.2d 459 (Mo.App.1974). We cannot say here that the decision to remove was clearly erroneous, for there was sufficient evidence to support a finding that the defendants—although perhaps inadvertently and well intended—did disregard certain of their obligations as trustees under the trust indenture giving grounds for their removal.

■ We do not suggest that defendants were dishonest or venal in actions, but there was a failure on their part to fulfill their responsibilities by absence of minutes, by neglecting to observe assessment requirements, by abandoning a roadway easement contrary to trust indenture criteria. Defendants, as trustees, are bound to perform strictly in compliance with the trust instrument by which their powers and duties are determined. Ginter v. City of Webster Groves, 349 S.W.2d 895 (Mo. 1961). Defendants, without good reason, did not perform their functions in strict accord with the trust indenture. In Ford v. Boyd, 298 S.W.2d 501 (Mo.App.1957), trustees of a subdivision were removed based on the following conduct: the failure to keep records, improper levy assessment, antagonistic atmosphere existing between trustees and residents of the subdivision, allowing dwellings to be constructed without prior plan approval, allowing a road to be used by non-residents. While none of the actions of defendants-trustees may have been as flagrant as perhaps some of those in Ford v. Boyd, *supra,* they at least afford a basis for the trial court's conclusion that the defendants should be removed as trustees, and we defer to that conclusion.

Defendants suggest that intervenors have failed to exhaust their administrative remedies and that, therefore, the final court decree is somehow defective. We have not been advised what administrative remedies would be available and we per-

ceive none. We therefore ˚rule against defendants on this point.

 Defendants do not challenge the right of intervenors to intervene in that portion of this case regarding the issue of whether plaintiffs and intervenors have an easement over Wild Deer-Copper Hill. But while they did not object at trial, defendants for the first time now take exception to intervenors' participation in the case regarding the removal of defendants as trustees as interjecting a new and different issue into the case. We find against defendants on this point also.

". . . [T]he statutes relating to intervention are broadly remedial and . . . they are to be liberally construed to facilitate the determination of all related disputes in one proceeding, and thereby avoid a multiplicity of actions." State ex rel. Hughes v. Smith, 485 S.W.2d 646 at 651 (Mo.App.1972).

There is no question that under Rule 52.-12 V.A.M.R., intervenors would be entitled to intervene in that portion of the case concerning the road easement. Defendants accept that fact, and did not object to the trial court's permitting intervenors to bring their related action concerning the removal of defendants for failure to perform their duties under trust indenture based, in part, on the issue of the road easement and defendants' abandonment thereof in a manner contrary to the trust instrument. To require intervenors to bring another suit while the subject matter was before the court would only encourage multiple actions which should be discouraged in view of the liberal interpretation to the statutes and rules relating to intervention. See State ex rel. Aubuchon v. Jones, 389 S.W.2d 854, 860 (Mo.App.1965). The issue of whether defendants improperly abandoned roadway easement of Wild Deer-Copper Hill is intertwined with the issue of whether such an easement in fact existed. Therefore, the determination of the removal of defendants as trustees was related and not totally foreign to the primary issue of easement by prescription, and the trial court did not err in its consideration of the two issues together.

Since we have affirmed the judgment of the trial court in removing defendants from office, we need not consider whether the trial court should have stayed execution of its judgment removing defendants as trustees pending appeal and have approved a supersedeas bond for that purpose.

The judgment is affirmed.

SMITH, P. J., and CLEMENS, J., concur.