Norman C. AUXIER et al., Appellants,

v.

Eugene HOLMES et al., Respondents.

No. WD 30728.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Donald Pierce, St. Joseph, for appellants.

Charles S. Wilcox of Wilcox, Houts & Douglass, St. Joseph, for respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an action to quiet title and a counterclaim seeking to establish a prescriptive easement. Judgment quieted title in appellant. Judgment also established a prescriptive easement to the use of respondent. The judgment is affirmed.

This appeal is directed to that portion of the judgment establishing the prescriptive easement. Appellants allege two points of error, which in summary contend that the circuit court erred in finding the evidence supported respondents' open and notorious use of the entire lane, and that the circuit court erred in finding the evidence supported respondents' continuous use of the entire lane for the required statutory period of ten years.

Review of this judgment is limited by the rule in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976) requiring affirmance unless there is no substantial evidence to support the judgment, unless the judgment is against the weight of the evidence, unless the judgment erroneously declares the law or unless the judgment erroneously applies the law. Also, where the evidence consists of contradictory and conflicting testimony, this court defers to the trial court's oppor-

tunity and ability to view the witnesses and assess their credibility, see *Spooner v. Bates*, 550 S.W.2d 200 (Mo.App.1977) and *George v. Dickinson*, 504 S.W.2d 658 (Mo. App.1974).

Appellants are the owners of record of forty acres of land including the lane which became the area of dispute. The attached exhibits depict the disputed area and surrounding land interests of the parties.

SECTION TWENTY (20), IN TOWNSHIP FIFTY — SIX (56), OF RANGE THIRTY—THREE (33), BUCHANAN COUNTY, MISSOURI

RESPONDENTS' EXHIBIT

APPELLANTS' EXHIBIT

This action was initiated to quiet title to the disputed lane in appellants. Respondents counterclaimed, arguing that they and their predecessors had made open, notorious and continued use of the lane for a period exceeding the ten year statutory requirement and by virtue of such open, notorious and continued use, had gained a prescriptive easement over the entire length of the lane.

The disputed area has been defined by superimposing upon the above exhibits the letters "A" and "B". There is no dispute between the parties that respondents were entitled to the use of the lane from the area marked B to the south.

Appellant Norman C. Auxier, in addition to his own testimony, produced five witnesses. John and Ola Mae Noland testified that the land owned by appellant had been owned by Mrs. Noland's uncle, Francis German, from 1903 until his death in 1949. The Nolands further testified that Mr. German had used the lane to reach his house at the north end of the lane. They said the lane was used by many hunters during the time Mr. German owned the property. Mr. Noland stated that he had seen no tracks on the lane leading north or northeast (where the lane purportedly leads to respondent Holmes' north property) while the property was owned by Mr. German. Mr. Lloyd Budine, who acquired the property in 1962, testified that the end (north) of the lane was overgrown, that he had never observed Mr. Holmes make use of the land but that

he "must have used it" to harvest his crops. His testimony was followed by that of Helen Loubey, whose husband acquired the property in 1966. Mrs. Loubey testified that the north end of the lane was full of brush. She said she had observed Mr. Holmes make use of the lane only midway to the first gate, which was on the east between two culverts, and which opened onto respondents' land. (This, as should be noted, is the area south of the disputed area). Joe Gregory, who purchased the land from Mr. Loubey in 1972, testified that the north end of the lane was overgrown and while it looked as if it had once been a lane, the area was not usable as such. Mr. Gregory further testified that he had worked on the lane later and realized Mr. Holmes was making use of the lane to the point of the first gate between the two culverts. (Once again, it should be noted that this refers to the area south of the disputed area).

Mr. Auxier testified that he bought the land in 1975 and that either in late 1974 or early 1975, was aware that someone was using the entire lane. He stated that in May, 1975, he realized Mr. Holmes was making use of the entire lane. In September, 1976, Mr. Auxier constructed a gate across the lane, which gave rise to the instant proceedings.

Through appellants' witnesses, condition of the lane was further described. The Nolands testified that there had been a gate or wire across the lane south of Mr. German's house. Mr. Budine stated he had put up a gate south of the house in 1963. Mr. Auxier testified that there were no gates when he acquired the property. Mr. Auxier and Mr. Loubey were aware of the "midway gate" leading to Mr. Holmes' property. All of the witnesses were aware of fences on both sides of the lane, although the testimony over the fencing conditions differed. Appellants' witnesses testified that the lane generally was in poor shape and that there had been times when the lane was not usable because the culverts would wash out. All of the witnesses claimed responsibility and participation in varying degrees for maintenance of the lane.

In addition to their own testimony, respondents tendered eight witnesses. Mabel Weakley testified that she had been acquainted with the lane for 75 years, and that school children used it a long time ago. Everett Farr testified that Mr. Holmes' father had made use of the entire lane in the early 1930's to water and hay cattle in the north pasture. He also stated that children and trappers used the lane in the 1930's. In 1965, he helped Mr. Holmes on his farm during planting and harvest, and drove a combine on the lane to the first gate a maximum of two to three days a week. Mr. J. L. West testified that he had worked for Mr. Holmes from 1946 to 1955, during which time he drove tractors, plows and discs on the entire lane through the northern most end. Jerry Archdekin testified that he rented the land in 1963 and 1964 and made use of the entire lane to get to the north pasture of respondents' land.

Respondents testified that the lane had been used since 1936 and that while the main use was to the first gate, there had been use of the lane to get to the northern most area of their property to plant and harvest crops and to tend to cattle. The evidence revealed daily use of the entire lane for the past five or six years. The evidence further revealed that neither respondents nor their predecessors had received permission for the use of the lane. Respondents offered further evidence regarding the condition of the lane. They stated that there was always a gate at the north end of the lane which Mr. Holmes and his father used to gain access to the north portion of the Holmes' land. Respondents' witnesses testified that there had been fences on both sides of the lane (although a Mr. Grooms testified that during the 1930's and 1940's there was no fence along the west side of the lane). Respondents denied that there was any gate south of the German house as testified to by appellants' witnesses, Mr. & Mrs. Noland. Respondents further testified that there was never any gate on the lane until the one installed by appellants.

Respondents' evidence also included the testimony of Verl Sloan, who had done bulldozing work for the respondents. Robert Kneib, who had been a county road grader in the 1940's, testified that he did maintenance work on the lane which extended to the north end of the lane past the German house. This witness testified that he observed no gates along the lane except to the north of the German house.

Mr. Grooms, Mr. Farr, Mr. Archdekin and Mr. Holmes denied there was brush and trees blocking the north gate, at least as far back in time as 1930. Mr. Holmes testified that his father had helped build the grade to close the culvert in 1957, fixed the stone bridge and had gravelled and put dirt on the lane many times. Mr. Holmes further testified that he had most recently done work on the north end of the lane in 1972. Mr. West stated he assisted Mr. Holmes in repairing a washed out culvert sometime between 1946 and 1955.

At the close of the evidence, the trial court entered its findings of fact and judgment. It found respondents and their family had used the lane to travel to and from their land for over fifty years; that the lane was fenced on both sides and that no gate barred respondents' use of the lane; and that respondents and their predecessors in title had made open, notorious, continued and uninterrupted use of the lane for over fifty years.

Judgment was entered quieting title to the lane in appellants, but granting respondents a prescriptive easement to travel the lane for farming purposes to reach their farmland and to enter onto and exit from it at the south end at a gate near the top of a knoll between the first and second culvert and to enter and exit at a gate on the east side of the road at the north end of the lane.

As was noted above, disposition of this appeal falls within the confines of *Murphy v. Carron, Spooner v. Bates* and *George v. Dickinson, supra.* In the instant case, the trial court was faced with conflicting testimony on the one hand which claims the establishment of a prescriptive easement, and the testimony on the other hand refuting the establishment of such easement.

When the entirety of the evidence is reviewed, it becomes apparent that a prescriptive easement was established, if at all, prior to 1956. The period subsequent to 1956 becomes important only if the evidence reveals the respondents abandoned the easement and if subsequent transfers of the servient property (appellants' land) extinguished the easement.

Appellants erroneously argue that the period between 1962 and 1971–72 is critical to the establishment of a prescriptive easement since appellants claim the owners have not been aware of the full use of the lane since 1962 and at best, that prior to 1971–72, the use of the lane was sporadic. Appellants further contend that by virtue of such sporadic use, such use was not open, notorious and continuous for the required statutory ten-year period.

There is no preset formula for determining if a given set of facts or circumstances constitute an open and notorious use, and each case must be decided upon its own facts and circumstances. Notice is a requirement to establish a prescriptive easement, and such a notice must be open, visible, continuous and uninterrupted. Such a notice must serve as an adequate notice to the owner, but it need not be expressly made. Rather, it can be inferred from the facts, see *George v. Dickinson, supra.*

In the instant case, the evidence was substantial to support the trial court's finding of a prescriptive easement. Fences existed on both sides of the lane at least 60 years; there was a gateway midway on the lane and at the north end of the lane; the lane was travelable and respondents and others had worked to repair and maintain the lane. The evidence was also substantial to support the trial court's finding that there was "open and notorious use" of the lane by respondents and their family for over fifty years and that appellants and their predecessors, by virtue of such evidence, had notice of such use.

While the evidence clearly supports the trial court's finding of open and notorious use, a remaining question needs to be answered. That question is, "Was the open and notorious use continual so as to satisfy the requirements of time (10 years) under our statute?"

Appellants contend there has been but a "sporadic use" of the lane pertinent to the planting and harvesting of crops. Appellants contend that such use, if there had previously been established a prescriptive easement, amounted to an abandonment.

As has been pointed out, a prescriptive easement was established. To constitute an abandonment of the easement, the evidence must support (absent an expressed abandonment) an intent to abandon. Even failure to use will not by itself necessarily constitute an abandonment, see *Dalton v. Johnson*, 320 S.W.2d 569 (Mo. 1959) and *George v. Dickinson, supra.*

The evidence herein shows a continual use of the entire lane for purposes of planting and harvesting crops and carrying cattle, for a period of fifty years or more. The use was continual and travel occurred "at such times by the users as their convenience and business needs required," see *Moravek v. Ocsody*, 456 S.W.2d 619, 625 (Mo.App.1970).

The establishment of a prescriptive easement must contain the following requirements: (a) the use of the property for a 10-year period; (b) the use must be adverse; (c) the use must be under a claim of right and (d) there must be notice to the owner, the notice being open, visible, continuous and uninterrupted, see *Speer v. Carr*, 429 S.W.2d 266 (Mo.1968).

The evidence herein clearly shows a prescriptive easement was established prior to the acquiring of the servient property by appellants. The evidence reveals that such easement existed prior to respondents having acquired their interests in 1956. Because the establishment of the easement was prior to 1956, the easement became appurtenant to respondents' land.

The issue of abandonment has been addressed as the evidence shows a continual use of the lane by respondents and their predecessors.

The evidence supports a finding that appellants and their predecessors had notice of the adverse, open use of the lane by respondents and respondents' predecessors. There is no evidence by deed or other document of title which denotes extinguishment of the easement by abandonment or by any other means. The remaining factual evidence of this record fails to support a conclusion of abandonment.

While it is correct that appellants and perhaps their predecessors had no actual notice of use, such is not necessary because from the surrounding facts, such notice can be constructive or implied, see *Drainage District No. 48 v. Small*, 318 S.W.2d 497 (Mo.banc 1958).

Based upon the evidence on this record and pursuant to the rule of *Murphy v. Carron, supra*, the judgment herein is in all respects affirmed.

All concur.