**Arch and Marylin JOHNSTON,
Plaintiffs/Respondents,**

v.

**Paul and Opal BATES,
Defendants/Appellants.**

No. 54464.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 25, 1989.

John D. Rayfield, Crystal City, for defendants/appellants.

Daniel B. Hollingsworth, II, Patricia A. Riehl, Hillsboro, for plaintiffs/respondents.

SATZ, Judge.

In this case, the trial court found plaintiffs (Arch and Marylin Johnston) have an easement by prescription over land owned by defendants (Paul and Opal Bates). Defendants appeal. We affirm.

Based upon our understanding of the exhibits and testimony, the area in question is shown by the following schematic drawing.

In 1952, Maurice and Margaret McClain (grantors) owned a large tract of land in Jefferson County, Missouri.[1] They platted part of the land as an eight lot subdivision. In 1953, defendants bought two of those lots. They bought three more in 1961. That same year, grantors hired Mr. Johnston to excavate, grade and gravel two roads, Ridge View Drive, on the east border of the subdivision and Terrace Drive, on the north border. Between that time and July 22, 1970, defendants acquired the remaining three lots in the subdivision. Grantors continued to own land north and east of the two platted roads.

In 1971, grantors sold a 75.84 acre tract located north of the subdivision to Mitchell Campbell (Campbell). Grantors retained a 14.5 acre tract between the 75 acre tract and the subdivision. The deed to the 75 acre tract granted Campbell "an easement of ingress and egress over, along and across an existing 40' roadway running from the south line of the above described real estate southwardly to State Highway 'A', together with the right to repair and maintain the same." From the record, it appears the "roadway" referred to a combination of Ridge View Drive, running north and south along the east border of the subdivision, and Ridge Drive, which continues northward from the north side of east-west Terrace Drive to the southern boundary of the 75 acre tract.

In 1974, plaintiffs purchased from grantors the 14.5 acre tract located between the subdivision and Campbell's 75 acre tract. The conveyance excluded a 1.22 acre tract which was reserved to the grantors. Ridge Drive bisects this 1.22 acre tract.

On June 13, 1979, defendants purchased the 1.22 acre tract from grantors. The following September, the grantors "transferred" their "interest" in Ridge View and Terrace Drives to defendants by a quit claim deed. Then in 1984, plaintiffs purchased the 75 acre tract from Campbell's estate. The deed memorializing this purchase was made "subject to any Easements ... of record, if any." By a separate quit claim deed, the executor of Campbell's estate conveyed "[a]n easement of ingress and egress, along and across a 40' roadway running from the south line of [the] 75.84 acre tract, ..., southwardly to State Highway 'A',...."

Thus, at the time of trial, defendants held title to the subdivision, Ridge View and Terrace Drives and a 1.22 acre tract north of Terrace Drive which was bisected by Ridge Drive, and plaintiffs held title to the 14.5 acre tract north of the subdivision and to the 75 acre tract north of this 14.5 acre tract. Defendants' 1.22 acre tract was surrounded and enclosed by plaintiffs' 14.5 acre tract. The trial court found that plaintiffs had a prescriptive easement along Ridge Drive and Ridge View Drive for access from the 75 acre tract, purchased from Campbell's estate, to Highway A. Defendants' appeal, contesting this easement, followed.

A prescriptive easement is created by (1) an adverse use, (2) that is continuous and uninterrupted, (3) for the period of prescription. *Cramer v. Jenkins,* 399 S.W.2d 15, 17 (Mo.1966); *Hodges v. Lambeth,* 731 S.W.2d 880, 882[4] (Mo.App. 1987). Restatement of Property § 457 (1944). The period of prescription in Missouri is ten years. § 516.110 RSMo.1986; *Fenster v. Hyken,* 759 S.W.2d 869, 870[1] (Mo.App.1988). That period can be reached by a single continuous, uninterrupted adverse use for ten years or more or by "tacking" together several of such uses, each of which may be less than the ten years but their total amounting to ten years or more. *Hodges v. Lambeth, supra* at 882.

Adverse use is a more complex concept. A use is adverse to the owner of the interest in land when it is (1) "not made in subordination" to the owner, (2) "wrong-

---

1. The transactions and conveyances in this case cover more than 30 years. During that time, Maurice and Margaret McClain, or Margaret McClain, as a widow, or Margaret McClain and her son conveyed part of this tract to the parties or to a third party, plaintiffs' predecessor in title. For convenience, we shall use the term "grantors" to refer to the McClains either individually or collectively.

ful, or may be made by [the owner] wrongful, as to him", and (3) "open and notorious." Restatement of Property § 58 (1944); *Cramer v. Jenkins*, 399 S.W.2d 15, 17(Mo.1966). To be adverse, it is only necessary for the use to proceed without recognition of the owner's authority to permit or prohibit the use; it is not necessary that the user intend to violate the owner's rights. *Fenster v. Hyken, supra,* 759 S.W.2d at 870; *McIlroy v. Hamilton,* 539 S.W.2d 669, 673[3] (Mo.App.1976). Conversely, if the use is permissive, it cannot ripen into a prescriptive use. *See, e.g.,* Powell, *Real Property* § 413, p. 34–114 (1987).

◼ While the user need not intend to violate the owner's rights, his use must be open and notorious. *Fenster v. Hyken, supra* at 870. This assures the potential servient owner reasonable notice of the need to protect himself against the effect of the use. *See, Auxier v. Holmes,* 605 S.W.2d 804, 809[3] (Mo.App.1980); Restatement of Property § 458; comment h. The notice, however, "can be constructive or implied" from circumstantial evidence. *Auxier* at 810[11]. Circumstantial evidence, also, is often used to show the use has not been made in subordination to the rights of the servient owner. Thus, proof of use of another's land normally justifies a presumption that the use has been adverse until this presumption is rebutted by other evidence. *Gill Grain Co. v. Poos,* 707 S.W.2d 434, 437[2] (Mo.App.1986); *Parker v. Rogers,* 698 S.W.2d 617, 618 [4, 5] (Mo. App.1985).

By tacking plaintiffs' use to the use of Campbell, plaintiffs' predecessor in title, the trial court found that plaintiffs showed a continuous, uninterrupted use of the roadways in question for the prescriptive period. The combined use, the court said, raised a "presumption that the use was adverse and under a claim of right." This shifted the burden to defendants, the court said, "to show ... the use was permissive in nature or by virtue of some agreement contrary to the right." Defendants, the court concluded, failed to meet this burden.

◼ There is sufficient evidence to support the Court's findings. When the grantors conveyed the 75 acre tract to Campbell, the deed contained the grant of "an easement of ingress and egress over, along and across an existing 40' roadway running from the south line of the above described real estate southwardly to State Highway 'A', together with the right to repair and maintain the same." The basis for grantors' power to grant the easement presumably came from the language of the deeds to the subdivision lots. Those deeds dedicated an easement in the roads to the lot owners and reserved to grantors the right to "convey to others the right to use the [roads] for road purposes." However, in 1971, when Campbell purchased the 75 acre tract, grantors no longer owned any of the lots in the McClain's Ridge View Subdivision; by then, defendants had acquired all eight lots. When defendants purchased the last lot in the subdivision, title was merged in them, extinguishing any easements existing to benefit the individual lots. *Denning v. Manley,* 610 S.W.2d 51 (Mo.App.1980); *Ball v. Gross,* 565 S.W.2d 685 (Mo.App.1978).

Thus, at the time grantors attempted to grant Campbell a roadway easement, they retained no interest in the property composing the subdivision and no right to grant an easement on that property. Their conveyance of the easement was legally ineffective. Campbell's use of the easement, made on the assumption the conveyance of the easement was effective, was a use made under a claim of right, not in subordination to the defendants, the owners of the servient estate. Powell, *Real Property,* § 413, p. 34–113 (1987). *See also, Majors v. Bush,* 356 Mo. 17, 200 S.W.2d 892, 895 (1947). Campbell need not have intended to violate defendant's rights, it was only necessary that he proceeded to use the easement without recognizing defendants' authority to permit or prohibit the use. *Fenster v. Hyken,* 759 S.W.2d 869, 870[2] (Mo.App.1988); *McIlroy v. Hamilton,* 539 S.W.2d 669, 673[3] (Mo.App. 1976).

Defendants, however, contend plaintiffs did not show Campbell's use was open and

notorious. Defendants acknowledge a cable was placed across one of the roads, apparently Ridge View Drive, for a period of eight or nine years. But, defendants argue there was no showing "when the cable was set", and, defendants argue, the evidence showed "the use of the cable was to benefit all the owners." In addition, defendants argue, the evidence showed "at most, [that] the Respondents [2] used some of the roads ... eight to ten times per year and the use was mostly for deer hunting." Defendants select only part of the evidence and view that selection most favorably to them. Their argument, based upon this narrowly selected and improperly viewed evidence, is not persuasive.

In this court tried case, we defer to the implicit determination of credibility made by the trial court, view the evidence and permissible inferences most favorably to the judgment and disregard all contrary evidence and inferences. *See, e.g. Snowden v. Gaynor,* 710 S.W.2d 481, 483 (Mo. App.1986). Defendants did not offer any evidence. Plaintiff Mr. Johnston and another witness testified on behalf of plaintiffs. Admittedly, the record is not a model of precision, but defendants had ample opportunity to cross-examine the witnesses.

During Mr. Johnston's testimony, defendants objected to him testifying about Campbell's use of the roads which Mr. Johnston did not personally observe or know about. These objections were sustained. However, Mr. Johnston did testify, without objection, that Campbell used the roads—Ridge View Drive, Terrace Drive and Ridge Drive—from "1971 until ... [Campbell] died", and Mr. Johnston also testified that "Campbell used the road all the time." In addition, Mr. Johnston testified that he put up the cable, but he said "we" put a padlock on it, to which "we" had matching keys. Johnston gave two keys to Campbell, and Campbell gave one of these keys to defendants. The cable was put up "to keep people from travelling in and out of the road."

The trial court, apparently, interpreted Mr. Johnston's use of the term "we", in his testimony about the padlock, not be the royal "we", meaning Mr. Johnston alone; rather, the Court interpreted the "we" to mean Mr. Johnston and Campbell. Thus, the court found

> Plaintiffs and ... Campbell have consistently acted in such a manner so as to infer a claim of right to the three roadways.... Certainly, their actions in "cabling off" the roads and then providing a key to the defendants was done under a claim of right that was bought (sic) home to the defendants.

Moreover, the cable remained for eight or nine years, and, although the precise dates of the cable's existence were not shown, it is sensible to infer from the record, as the trial court apparently did, that this eight to nine year period was during Campbell's ownership of the 75 acre tract. In addition, Mr. Johnston testified he was with Campbell when Campbell used the roads, eight or nine times a year to go hunting.

In short, the evidence shows "Campbell used the road all the time", from "1971 until ... he died", cabled off one of the roads along with Mr. Johnston, for eight to nine years, gave a key to the padlock on the cable to defendants, and used the road for hunting eight to nine times a year. This evidence, with favorable inferences, supports the conclusion that defendants were on notice that Campbell was using the roads and, thus, his use was "open and notorious." *See Auxier v. Holmes, supra,* 605 S.W.2d at 810.

Defendants base another argument on their contention that "the evidence showed at most Respondents [Johnstons] used some of the roads in [the] subdivision eight to ten times per year", "the use was mostly for deer hunting. No regular dates or time were specified." Defendants argue this evidence does not show a continuous and uninterrupted use.

The terms "continuous" and "uninterrupted" are not synonymous; the first refers to the behavior of the claimant, the second refers to the behavior of the poten-

---

**2.** We assume, in his context, defendants meant    to refer to Campbell not the Johnstons.

tial servient owner. Restatement of Property § 459 (1944). Continuity is construed reasonably. It does not demand the use must be made at all times, day and night. It only requires use often enough to constitute notice of the claim and to show there was no break in the claimant's state of mind. *See Auxier v. Holmes, supra* at 810.

Mr. Johnston testified that Campbell used the roads "from 1971 ... until he died", "used [one of the roads]" all the time and used the roads eight to ten times a year for hunting. Certainly this evidence does not negate Campbell's "continuity" of use.

Likewise, there is a clear inference from the evidence that Campbell's and Mr. Johnston's uses were uninterrupted. "Uninterrupted", as noted, is a determination based upon the servient owner's actions; i.e., whether the owner's affirmative actions caused a cessation in the use. The owner's ineffective protests or disregarded remonstrances, however, only strengthen the evidence of uninterrupted use. *See, Restatement of Property*, § 459, comment c. (1944). The record discloses no effective action taken by defendants.

In short, the trial court's finding of a prescriptive easement can be justified by the tacking of Campbell's use and Mr. Johnston's subsequent use of the roads from 1971 to 1985, under a claim of right derived from the invalid easement grantors attempted to convey to Campbell, all done without recognition of any right of defendants to prohibit such use. More important, perhaps, the trial court's finding of a prescriptive easement in plaintiffs can be justified solely on the use of the easement by Mr. Johnston.

█ Mr. Johnston began his use in 1968. In 1969, he "performed ... road maintenance on Ridge View Drive or Terrace Drive" because he "was using that road to go back to other property [he] owned" at that time, apparently, north of the 75 acre tract. Then, in 1974, the Johnstons "acquired from [grantors] 30.25 acres north of the [75] acre tract and ... adjoined that tract."

Defendants argue Mr. Johnston was given permission to use the easement at that time by the grantors, and, thus, his use initially was permissive and did not ripen into a prescriptive right. Again, defendants read the evidence and permissive inferences in the light most favorable to them, rather than reading the record most favorably to the judgment against them. *See, e.g. Snowden v. Gaynor, supra.*

In 1968, plaintiff, Mr. Johnston, purchased some land near the area in question, apparently north of the 75 acre tract. He began using Ridge View Drive "to go back into the ... property [he] owned back there." When asked whether he had "obtained an easement to go back and forth across Ridge View Drive at that time". He replied:

I didn't feel I needed one. As far as I was concerned it was a public street.

And then, when asked whether he had asked grantors for permission to use the road, he answered:

I never asked permission. They volunteered when I bought the first ground.

From this testimony, we must make only those inferences most favorable to plaintiffs, not defendants. To us, this testimony shows plaintiff began his use of the roads without recognition of the right in any person or party connected with this cause to permit or prohibit his use, and, therefore, his use was "not made in subordination" to those persons or parties.

Mr. Johnston's use also was "open an notorious" and "continuous and uninterrupted." He testified that he used the roads "all the time," "[p]rior to [his purchase] in 1984." Defendants must have known of this use. As noted, a cable was put across one of the roads, apparently, across Ridgeview Drive. If Campbell and Mr. Johnston together did not put up the cable, then the record can only be read as showing Mr. Johnston put up the cable alone. And, if Campbell and Mr. Johnston together did not control the keys to the padlock on the cable, then Johnston would be the one who "gave" defendants a key, through Campbell. Defendants made no

objection to this cable being across the road for eight to ten years. Defendants did have the cable "taken down", but Mr. Johnston said he still continued to use the roads.

Defendants had ample opportunity to establish the exact limits of Mr. Johnston's use of the roads "all the time." However, during cross-, re-cross- and further re-cross examination, defendants failed to do so. None of defendants' questions to Mr. Johnston were designed to elicit answers which would necessarily limit or more precisely define his use of the road "all the time". Each of Mr. Johnston's answers were consistent with his use, and he never contradicted nor hedged his terminology.

To be sure, Mr. Johnston was asked on re-cross examination whether he was with Campbell every time *Campbell used* the "easement". He answered: "Not every time," only when he went with Campbell "hunting, mostly, [to] see about the property", about "eight or ten times" a year. But this testimony was directed to Johnston's knowledge of Campbell's use of the easement and, therefore, would only affect Mr. Johnston's testimony about Campbell's use of the easement. The trial court weighed that testimony in reaching its conclusion that Campbell's use was adverse, open and notorious and continuous. Simply stated, Mr. Johnston's use when with Campbell is not inconsistent with Mr. Johnston's use "all the time". It is consistent with it.

Thus, the court could have reached its result solely on Mr. Johnston's use. Mr. Johnston's initial adverse use of the easement in question was to go north from Highway A up to and across the 75 acre tract to an undescribed parcel of land he owned "to the rear" of the 75 acre tract. In 1974, however, he purchased a "30.25 acre tract", "north of" and adjacent to the 75 acre tract. Certainly, from 1974 to 1984, the year he purchased the 75 acre tract from Campbell, he used the easement to go from Highway A across the 75 acre tract to his 30.25 acres. The court, thus, could have found that, in 1984, Mr. Johnston has the prescriptive right to the easement in question plus a prescriptive right to an easement across the 75 acre tract. The prescriptive easement now defined by the court was, in 1984, just part of the total easement to which Mr. Johnston had a prescriptive right. In 1984, he purchased the 75 acre tract, and defendants, thus, have no grounds to complain. On appeal, our primary concern is the correctness of the result, not the route taken to reach it. *Maryland Plaza Redevelopment v. Greenberg,* 594 S.W.2d 284, 286 [1, 2] (Mo.App. 1979).

Defendants also argue the land in question here was "unenclosed, open and rough land", and the use of this kind of land, defendants argue, creates a presumption the use was permissive. As an abstract principle of law, defendants' argument may be correct. *See, Burnett v. Sladeck,* 251 S.W.2d 397 (Mo.App.1952). However, there was ample evidence here that the area in question was developed, and, therefore, the "wild land" exception does not come into play. *See, e.g., Carpenter–Union Hills Cemetery v. Camp Zoe,* 547 S.W.2d 196, 202–203[7][8] (Mo.App.1977). Thus, the court found "[t]hat Ridge View Drive, Terrace Drive and Ridge Drive have been visible to the average person since 1952 and are visible to-day."

Finally, defendants argue neither plaintiffs' proof nor the trial court's order describes the easement granted with sufficient precision; in particular, defendants contend, Ridge Drive is not properly described in the proof or order. We disagree.

The fact that Ridge Drive is not described by metes and bounds, either by plaintiffs or the court, does not invalidate the easement. Ridgeview and Terrace Drives were platted, graded and gravelled. They, along with Ridge Drive, were visible to the eye and had been for the period of prescription. A more precise description might have been better, but less detail and precision is required in a rural than urban setting. *Kohlleppel v. Owens,* 613 S.W.2d 168, 175[9] (Mo.App.1981). The court's granting an easement for "an existing 40' roadway running from the south line of a 75.84 acre tract to land ... southwardly to

State Highway 'A' " is not "so wanting in descriptive detail as to be either void or unenforceable." *Allen v. Smith,* 375 S.W.2d 874, 883[23] (Mo.App.1964).

In summary, the trial court's finding of a prescriptive easement can be justified by either of two theories: the tacking of Campbell's use and Mr. Johnston's subsequent use of the roads from 1971 to 1985, under a claim of right derived from the invalid easement grantors attempted to convey to Campbell, all done without recognition of any right of defendants to prohibit such use; or solely on Mr. Johnston's use of the roads from 1968 through 1984 without recognition of any other person's right to prohibit him from that use.

Judgment affirmed.

SMITH, P.J., and STEPHAN, J., concur.