**Willis WHITE and Pauline White, his wife, Plaintiffs–Appellants,**

v.

**RUTH R. MILLINGTON LIVING TRUST, Defendant–Respondent.**

No. 16260.

Missouri Court of Appeals,
Southern District,
Division Two.

March 5, 1990.

Motion for Rehearing or to Transfer to Supreme Court Denied March 21, 1990.

Application to Transfer Denied
April 17, 1990.

Randy P. Schuller, Hackworth and Schuller Law Offices, Piedmont, for plaintiffs-appellants.

Thomas W. Millington, Schroff, Glass & Newberry, P.C., Springfield, for defendant-respondent.

MAUS, Judge.

The plaintiffs by Count I seek a declaration they have acquired an easement for ingress and egress by prescription. By

Count II, in the alternative, they seek the establishment of a private road of necessity under § 228.340. The defendant tendered to the plaintiffs an easement in the south eighteen feet of her property for the construction of a road. The judgment of the trial court declared the plaintiffs shall be entitled to the tendered easement and denied relief upon the petition. The plaintiffs appeal.

The following is a summary of the facts. The plaintiffs' tract is the south half (except two acres in the southwest corner) of Section 24, Township 28 North, Range 7 East in Wayne County, Missouri. The defendant's tract is the south half of Section 23 of said township and range. Obviously, the plaintiffs' 318 acres joins the defendant's 320 acres on the east. Neither tract is fenced. Except for a machine shed and cabin constructed by plaintiffs, neither tract is improved. The tracts are located in a wooded, sparsely settled area of Wayne County.

The earliest history and description of the tracts and roads involved were given by witnesses Peck West and Dee West, his wife. They lived in the area for approximately thirty years. The later history and description of the area and road were also related by the parties and other witnesses.

At all relevant times, an improved county road has extended generally north and south along the west side of the defendant's tract. An unimproved dirt road (road A) meanders through the woods, west to east, from the county road across the defendant's tract to the plaintiffs' tract. Road A varies in width and is bordered by trees, many of substantial size. The plaintiffs claim an easement by prescription in road A across the defendant's tract.

At one time, road A extended east through and beyond the plaintiffs' tract, approximately two and one-half miles to the McGee store, which is located on County Highway TT. When road A, beyond the plaintiffs' property, was abandoned is not clear. Witness Martin White was over that portion of the road in a four-wheel drive vehicle around 1972. Subsequently, a ditch was cut across that road just east of the

plaintiffs' tract. Peck West testified that in recent years that portion of the road had become so "plugged up" that he couldn't ride a horse on the road beyond the plaintiffs' property.

There is a cemetery in the two acres excepted from the southwest corner of the plaintiffs' tract. When Peck West moved to the area, he learned that a congregation of the Seventh–Day Adventist faith had maintained a church and school on the two acres. There was also the remnant of a stone house on road A.

Road B, also an unimproved dirt road, runs northeast from a point on the county road, well south of the defendant's tract. Road B extends northeast to the southwest corner of the plaintiffs' tract, the cemetery area. Presumably, road B at one time extended north to road A to place the cemetery two acres on a loop from the county road.

The plaintiffs bought their tract by a contract for deed on October 16, 1972. They subsequently received a warranty deed. The plaintiffs, and members of their family, used the tract for recreational purposes. Plaintiff Willis White was 70 years old at the time of trial, December 20, 1988. The plaintiffs have five sons. The plaintiffs and/or members of their family came to the tract to spend most weekends since the plaintiffs bought the tract. Initially, the plaintiffs placed a travel trailer on the tract. The five brothers built a machine shed on plaintiffs' tract using road A to haul materials. They later converted a portion of the machine shed into living quarters, or a cabin. The plaintiffs thought road A was a public road. They primarily used road A in going to and coming from their property. From time to time they graded and filled holes on that road. In the earlier years, when it was wet, they used road B, to avoid causing ruts in road A. At the time of trial, road B had become impassible by vehicle.

The plaintiffs bought their tract subject to a "timber deed" in favor of John E. Haggett. The timber deed sold all timber ten inches in diameter and above to Haggett and granted him eighteen months in

which to remove that timber. He used road A in removing the timber. In an unexplained manner, the defendant learned of his use and directed that he stop using road A unless he paid her $50 per month for the privilege. To avoid delay, Haggett made the payments for several months. When he quit cutting timber, Haggett repaired the road at defendant's request. He said he "hauled gavel [sic] back in there and I had my bulldozer down there, you know, to level and so forth."

The defendant lived in Advance, Missouri. She bought her tract in 1968. She knew of the existence of road A at that time. She considered it a logging road, a type of road commonly found in the area. She did collect $50 per month from Haggett for his use of the road through March 1974. It was difficult for her to estimate how often she saw the tract. She surmised that she had been there once a year since she bought it. Some of her family and friends used the tract for hunting. On more than one occasion in the 1970's she caused barbed wire to be placed across road A at its junction with the county road to bar unauthorized use of the road. The wire was removed. At one time she caused a cable to be placed across road A for that purpose. It, too, was removed. She did not know the plaintiffs were using road A. No one, including her family members, reported to her that the plaintiffs were using road A.

Defendant acknowledged that exhibits D through S (photographs) showed road A in substantially the condition it had been in through the time she owned her tract. Those photographs unmistakably show a well-defined dirt road through the woods.

On July 12, 1983, plaintiff Willis White called the defendant and asked permission to cut some trees along road A. Defendant testified this was the first she knew plaintiffs were using the road. Negotiations between the plaintiffs and the defendant to establish the plaintiffs' right to use the road were futile. On March 19, 1987, the defendant wrote to Willis White. That letter included the following two paragraphs.

"Under no circumstances will your continued use of the logging road which crosses our property be tolerated unless you acknowledge in writing, within ten days of the date of this letter, that your use of the road has been and will be with our express permission only.

As previously indicated, I would be willing to enter into an agreement with you providing for your occasional permissive use of the road for a period of time. However, should you fail to acknowledge in writing that your use has been and will continue to be permissive, an appropriate legal action will be instituted in Wayne County, Missouri, to obtain a court order prohibiting your further use."

The plaintiffs did not terminate their use of road A. They filed this action on August 10, 1987.

The plaintiffs' basic contention is that the overwhelming weight of the evidence established they had acquired an easement for ingress and egress over the route described as road A by prescription and that the trial court misapplied the law in finding they had not acquired such an easement. The fundamental requirements for the acquisition of an easement by prescription are well established.

"The elements that establish an easement by prescription have been outlined and considered in detail in countless decisions. See *Carpenter–Union Hills Cem. v. Camp Zoe, Inc.*, 547 S.W.2d 196 (Mo.App.1977); *George v. Dickinson*, 504 S.W.2d 658 (Mo.App.1974). The requirements have been summarized: 'An easement by prescription may be established by use which is shown to have been continuous, uninterrupted, visible and adverse for a period of ten years.' *Guerin v. Yocum*, [506 S.W.2d 46, 47 (Mo.App. 1974) ]." *Orvis v. Garms*, 638 S.W.2d 773, 776 (Mo.App.1982).

Of course, those fundamental elements have been refined and amplified where necessary by reason of the issues raised in individual cases. Such amplifications relevant to this case include the following.

"To be adverse, it is only necessary for the use to proceed without recognition of the owner's authority to permit or prohibit the use; it is not necessary that the user intend to violate the owner's rights." *Johnston v. Bates*, 778 S.W.2d 357, 362 (Mo.App.1989).

Also see *Fenster v. Hyken*, 759 S.W.2d 869 (Mo.App.1988); *Hodges v. Lambeth*, 731 S.W.2d 880 (Mo.App.1987); *McIlroy v. Hamilton*, 539 S.W.2d 669 (Mo.App.1976).

■ A use may be continuous within the meaning of the above requirement, even though it is not daily.

" 'Continuous enjoyment' simply means that the claimant must exercise the use as frequently as convenience or necessity requires consistent with the character of the property and the nature of the easement asserted." Bruce & Ely, The Law of Easements and Licenses in Land, Para. 5.05[1], p. 5–24 (1988).

"The evidence herein shows a continual use of the entire lane for purposes of planting and harvesting crops and carrying cattle, for a period of fifty years or more. The use was continual and travel occurred 'at such times by the users as their convenience and business needs required,' see *Moravek v. Ocsody*, 456 S.W.2d 619, 625 (Mo.App.1970)." *Auxier v. Holmes*, 605 S.W.2d 804, 810 (Mo.App. 1980).

Also see *Neale v. Kottwitz*, 769 S.W.2d 474 (Mo.App.1989).

■ It is not required that the adverse use be exclusive.

"[T]he fact that the right-of-way traveled by plaintiffs was in fact used by other people did not preclude establishment of an easement by prescription in plaintiffs." *Beldner v. General Electric Company*, 451 S.W.2d 65, 75 (Mo.1970). "The claim of right need not be a claim to possess title as in adverse possession, but it may be a nonexclusive right to use the property." *Fenster v. Hyken, supra* at 870.

Also see *Day v. Grisham*, 571 S.W.2d 473 (Mo.App.1978).

■ The trial court made detailed Findings of Fact and Conclusions of Law.

Those Findings substantially included the facts set forth in the above statement of the evidence. The Conclusions of Law included the following.

"*The crucial element lacking* in plaintiffs' claim in Count I for an easement by prescription is that of notice. The uncontroverted evidence presented before the court is that defendant, or even residents within the area of Road A, have either *never received any actual notice* of plaintiffs' use of logging Road A or, received no such notice until July of 1983. Plaintiffs therefore did not present proof that they have engaged in the requisite type of use of the roadway, with notice, for a period of ten (10) years and that, at the time of trial, such use, although possibly satisfying all other elements of easement by prescription, only satisfied all of the essential elements, including that of notice, for a little over five (5) years. *For these reasons*, relief requested by plaintiff [sic] in Count I, seeking establishment of an easement by prescription, must be denied." (Emphasis added.)

This is a clear determination by the trial court the plaintiffs established all the elements required for the acquisition of an easement by prescription in the route described as road A, but denied relief because plaintiffs did not prove the defendant had actual notice of their adverse use. The defendant seeks to sustain the judgment upon that basis. The issue presented in her brief is stated in the following terms. "Constructive notice of use is not sufficient." In support of that position, she argues: "Appellants would now have the Court hold that constructive notice of a use or possession will suffice to divest a property owner of its interest. The only constructive notice of ownership interest or claims of ownership interest accorded by the law is that in the recording of enforceable instruments and deeds in a recorder's office which are by statute sanctioned with the authority and ability to provide constructive notice by the mere act of recording." In denying relief, the trial court erroneously declared and applied the law.

It is generally recognized that to establish an easement by prescription, it is not necessary the owner of the servient estate have actual knowledge of an adverse use.

"However, the owner of the servient land is charged with knowledge of user and acquiescence in it where the user is open, adverse, notorious, peaceable and uninterrupted." Thompson on Real Property, Easements § 335, p. 141 (1980 Repl.) (footnote omitted.)

"If the user is open, adverse, notorious, peaceable, and uninterrupted, the owner of the servient land is charged with knowledge of such user and his acquiescence in it is implied." Thompson on Real Property, Easements § 341, p. 204 (1980 Repl.) (footnote omitted.)

"The landowner need not have actual knowledge of adverse usage. Rather, the claimant must prove that the use was sufficiently open and notorious to apprise a diligent owner of its existence. In other words, the usage must be of such a nature as to charge the landowner with constructive notice." Bruce & Ely, The Law of Easements and Licenses in Land, Para. 5.04, pp. 5–19—5–20 (1988).

That principle has been established as the law of this state by the Supreme Court at an early date. In *Boyce v. Missouri Pac. R. Co.,* 168 Mo. 583, 68 S.W. 920 (1902), the Supreme Court was considering whether or not a railroad company had acquired an easement by prescription. In holding that it had, the Supreme Court established the law of this state in the following language.

"Theoretically the use and easement are with the knowledge and acquiescence of the owner as much as is the adverse possession of a defendant in ejectment. For the law presumes that every man knows the condition and status of his land, and if any one ousts him, or trespasses upon his land, or enters into possession and sets up an adverse claim thereto, and the owner does not ask legal aid to dispossess him within the time limited for bringing such actions, the law assumes that the owner has acquiesced in the adverse claim.... In point of fact, the owner, like these owners, may have had no actual knowledge, and therefore did not expressly acquiesce; but the law implies knowledge, and therefore consent. This is as true of claims to easements as it is to claims to the land itself." *Id.* 68 S.W. at 922–923.

The law, as so established, has not been overruled. The principle has been recently reaffirmed.

"Nevertheless, 'a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises.' [*Drainage District No. 48 v.*] *Small*, 318 S.W.2d 497, 502 [Mo. banc 1958]. In this case an ordinary inspection by the defendants of the land depicted in the Spainhour survey would reveal the existence of a boat dock and a footpath leading to it. Thus, the defendants may properly be charged with notice of a servitude in favor of the plaintiffs." *Hall v. Allen,* 771 S.W.2d 50, 53 (Mo. banc 1989).

The doctrine has been consistently followed.

"While it is correct that appellants and perhaps their predecessors had no actual notice of use, such is not necessary because from the surrounding facts, such notice can be constructive or implied...." *Auxier v. Holmes,* supra at 810.

"The notice, however, 'can be constructive or implied' from circumstantial evidence." *Johnston v. Bates,* supra at 362.

Also see *Johnson v. Moore,* 346 Mo. 854, 143 S.W.2d 254 (1940); *George v. Dickinson,* 504 S.W.2d 658 (Mo.App.1974).

In the trial court, and in this court, the defendant has emphasized portions of the evidence to establish she had no actual notice of the plaintiffs' use of road A. Such evidence, of course, included her testimony that she had no actual knowledge. It also included testimony that no member of her family or their guests saw or reported use by the plaintiffs. She also in part relied upon the fact that Peck West, who lived in the immediate vicinity for thirty

years, never saw the plaintiffs using road A.

This evidence does support the conclusion defendant had no actual notice of the plaintiffs' use. However, as above noted, lack of such actual notice does not defeat the plaintiffs' claim.

Even the defendant's evidence supports the conclusion that the plaintiffs' use was sufficient to provide constructive notice of that use. The members of defendant's family were there only a few days each year. Yet they acknowledged the existence of the road. The defendant was there perhaps only one day each year. The photographs in evidence taken May 21, 1988 establish that road A was well defined. The defendant acknowledged that road A had been in substantially the same condition since 1968. Witness Dee West described road A as better than the average logging road. The defendant acknowledged there had been adverse use of that road by placing wire across road A several times in the 1970's. She knew the wire was later removed. When asked why she placed barbed wire across road A the first time, she replied, "We could see where cars were pulling in, or vehicles were pulling in."

The undisputed evidence established that the plaintiffs and members of their family used road A virtually each weekend since 1972. The plaintiffs' use was readily apparent from the improvements that were placed upon the plaintiffs' property during the period of time in question. The net effect of the evidence in respect to the issue of constructive notice, was established by two witnesses called by the defendant. Witness Mike Clark had lived in the area and had been familiar with road A for twenty-five years. He said, "[i]t's a beaten path" and even though he had not seen anyone using the road, "I knew someone was using it."

When asked if he had seen Willis White use the road, witness Peck West testified as follows:

"A. Well, actually see him, I couldn't say that I have.

Q. Okay.

A. But I do know that he uses the road."

The weight of the evidence established the plaintiffs' use of road A was sufficient to afford the defendant constructive notice of that use. *Johnston v. Bates,* supra. In denying the plaintiffs' relief, because they did not prove the defendant had actual notice of that use, the trial court misapplied the law and the judgment must be reversed. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment of the trial court is reversed. The cause is remanded for the entry of a judgment granting the plaintiffs relief upon Count I of the petition and declaring they have established by prescription an easement appurtenant to the tract owned by them for ingress and egress to that tract over road A as located by the survey in evidence. Such judgment will result in the denial of Count II. The costs are assessed against the defendant. The cause is remanded for further proceedings consistent with this opinion.

FLANIGAN, P.J., and PREWITT, J., concur.